**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BAO PING ZHENG,

Petitioner,

v. 3:26cv1015

TODD BLANCE, ET AL., ELECTRONICALLY FILED

Respondents.

**MEMORANDUM ORDER DENYING IN PART WITH PREJUDICE AND DENYING IN PART WITHOUT PREJUDICE PETITIONER BAOPING ZHENG'S PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)**

Pending is Baoping Zheng's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).

Petitioner's habeas petition contains four (4) claims: (1) ICE's failure to follow its own post-order custody and revocation procedures before re-detaining Petitioner, "combined with the arbitrary nature of re-detention more than twenty-eight years after the removal period expired," violated both the governing regulations, 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13(i)(3) (an *Accardi* doctrine violation), and Petitioner's procedural due process rights (Count I); (2) Respondents' detention of Petitioner "decades after the removal period without demonstrating that removal is reasonably foreseeable and without complying with the required review procedures" is in violation of 8 U.S.C. § 1231(a)(1)(B)(i) and 8 U.S.C. § 1231(a)(3) (Count II); (3) Respondents' detention of Petitioner violated the Due Process Clause of the Fifth Amendment to the United States Constitution (Count III); and (4) "Because Mr. Zheng poses neither a flight risk nor a danger, and because removal is not reasonably foreseeable, his detention serves no legitimate governmental purpose and violates both procedural and substantive due process" (Count IV). (*Id*. at 8-17).

As relief, Petitioner asks this Court to:

A. Issue a writ of habeas corpus ordering Respondents to immediately release [him] from custody;
B. Declare that [his] detention violates 8 C.F.R. § 241.13's revocation procedures, the *Accardi* doctrine, ICE's post-order custody regulations at 8 C.F.R. § 241.4, and the Administrative Procedure Act;
C. Enter a permanent injunction prohibiting Respondents from re-detaining [Petitioner] absent a lawful basis and concrete evidence that removal to China has become significantly likely in the reasonably foreseeable future;
D. In the alternative, order an immediate custody or bond hearing at which the Government bears the burden of proving by clear and convincing evidence that [Petitioner] poses a flight risk or danger that cannot be mitigated by conditions of release;
E. Award Petitioner his costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;
F. Retain jurisdiction to ensure compliance with this Court's orders; and
G. Grant such other and further relief as this Court deems just and proper.

(*Id.* at 17-18.)

## I. BACKGROUND

On June 1, 2026, Petitioner filed his habeas petition. (Doc. 1).

On June 23, 2026, Respondents filed their response in opposition to Petitioner's habeas petition. (Doc. 8).

On July 9, 2026, Petitioner filed a Reply to Respondent's Opposition, reaffirming his position. (Doc. 9).

On September 24, 206, Petitioner filed a Motion to Expedite Adjudication of Petition for Writ of Habeas Corpus. (Doc. 10).

On September 29, 2026, the Court ordered Respondents to file a Status Report addressing Petitioner's current custody status. (Doc. 11). That Status Report was filed on October 1, 2026. (Doc. 12).

Accordingly, Petitioner's habeas petition has been fully briefed and is ripe for adjudication.

## II. DISCUSSION AND FINDINGS

Petitioner asserts in his habeas petition, and Respondents do not dispute, that Petitioner: (1) is a native and citizen of the People's Republic of China; (2) entered the United States on or about November 22, 1993; (3) is subject to a final order of removal;[1] (4) was detained by ICE on May 27, 2026; and (5) currently is housed at Moshannon Valley Processing Center (MVPC"). (Doc. 1).

Respondents assert, and have submitted documentation to support, and Petitioner has not disputed, that: (1) in 2008, Petitioner was sentenced to time served for harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii); (2) as a result of his cooperation in his criminal case, action on Petitioner's removal from the U.S. was deferred conditioned on Petitioner reporting to ICE every six (6) months; and (3) Petitioner was detained by ICE on May 27, 2026, after ICE received authorization to enforce Petitioner's final order of removal. (Doc. 12).

### A. Counts II, III, and IV of Petitioner's Habeas Petition

The Court first addresses Petitioner's claims in Counts II, III, and IV, that his detention violates his rights under 8 U.S.C. § 1231 ("Section 1231") and the Fifth Amendment's Due Process Clause because: (1) the 90-day removal period applicable to Petitioner under Section 1231 expired on February 18, 1998, and the 6-month detention period identified in *Zadvydas v. Davis*, 533 U.S. 67 (2000) ("*Zadvydas*") expired on May 20, 1998, and Petitioner was not detained by ICE until May 27, 2026; (2) Respondents cannot show that Petitioner's removal to

[1] An immigration judge ordered Petitioner removed on June 17, 1996 and Petitioner's case appeal was dismissed on November 20, 1997. See https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 26, 2026).

China is reasonably foreseeable; and (3) Petitioner poses neither a flight risk nor a danger to the community (Doc. 1 at 10-17, Doc. 9 at 1-6).

In response, Respondents aver "that Petitioner is removable; that the 1996 Order of Removal is a Final Order; that, at its discretion, the United States has the right to remove Petitioner years after the Order became final; and Petitioner is not yet entitled to review of his detention since it is less than 6 months." (Doc. 8 at 2).

It is undisputed, and the Court finds, that Petitioner currently is detained under the post-removal detention provision of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1231(a) ("Section1231(a)").

Section 1231(a) directs the Attorney General of the United States to affect the removal of any noncitizen from this country within ninety (90) days of any final order of removal. 8 U.S.C. § 1231(a)(1)(A). The noncitizen must be detained during this ninety-day (90) timeframe, which is "referred to as the 'removal period.'" *Id.*, § 1231(a)(2).

If the noncitizen "does not leave or is not removed within the removal period," then s/he is normally subject to supervised release. 8 U.S.C. § 1231(a)(3). But, section 1231(a)(6) provides that certain categories of noncitizens who have been ordered removed, including inadmissible and criminal noncitizens or noncitizens whom the Attorney General has determined are a risk to the community or are unlikely to comply with the order of removal, "may be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6).

The text of section 1231(a)(6) does not contain an express limit on the duration a noncitizen can be detained under its authority. However, in 2001, the Supreme Court decided *Zadvydas v. Davis,* 533 U.S. 678 (2001), where it outlined the due process concerns that would be implicated by a statute permitting indefinite duration. *Id.* at 690-96. Invoking the canon of

constitutional avoidance so that it did not have to decide whether section 1231(a)(6) violated the Fifth Amendment's Due Process Clause, the Supreme Court interpreted the statute to contain an implicit temporal limit. It held that the statute, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689.

To help "guide lower court determinations," and to "limit the occasions when courts will need to make them," the *Zadvydas* Court ultimately held that six (6) months of post-removal-order detention is "presumptively reasonable." *Id.* at 700-01. Thereafter, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to produce "evidence sufficient to rebut that showing." *Id.* at 701. As the period of "postremoval detention grows, what counts as 'reasonably foreseeable future' conversely" concurrently shrinks. *Id.* Essentially, if removal is no longer reasonably foreseeable, continued detention is no longer authorized under section 1231(a)(6).

Contrary to Petitioner's position, and as asserted by Respondents, the Court first finds that while Petitioner's order of removal became final in 1997, and the mandatory 90-day period of mandatory detention set forth in Section 1231(a) expired 90 days after Petitioner's order of removal became final in 1997, because Petitioner was not taken into custody with respect to the order of removal until May 27, 2026, after authorization was provided to detain Petitioner in order to effectuate his removal from the U.S., the 6-month presumptively reasonable period of detention under *Zadvydas* did not start until Petitioner was detained by ICE on May 27, 2026. *See Deshati v. Noem*, Civ. No. 25-15940, 2025 WL 3204227, at *1 (D. N.J. Nov. 17, 2025) (denying amended petition without prejudice based on premature *Zadvydas* claim, finding

petitioner's 2025 re-detention legal even though mandatory detention removal period expired in 2014); *Liu v. Pittman*, Civ. No. 25-16289, 2025 WL 2856081, at *2 (D. N.J. Oct. 8, 2025) (denying petitioner's temporary restraining order seeking immediate release, finding petitioner's 2025 re-detention legal even though mandatory detention removal period elapsed in 1995); *Callender v. Shanahan*, 281 F. Supp.3d 428, 435 (S.D. N.Y. 2017) (concluding: "the six-month presumptively reasonable period of detention under *Zadvydas* . . . could not have begun until he was detained by ICE . . . .") (internal citation and quotation marks omitted); *id*. (reasoning: "This result is compelled not only by the language of *Zadvydas* but also by its logic.").

In so holding, the Court further concludes that as this is not a situation in which ICE has detained and released Petitioner on-and-off over time, seemingly in an attempt to circumvent *Zadvydas*'s limitations, Petitioner's arguments with respect to such a scenario are inapplicable to Petitioner's case.

Furthermore, the Court finds that because Petitioner has been detained since May 27, 2026, a period of approximately five (5) months: (1) Petitioner is within *Zadvydas*'s 6-month presumptively reasonable period of detention; (2) Petitioner's challenges to detention, as set forth in Counts II, III, and IV of his habeas petition are premature; and (3) Petitioner's habeas petition is denied to the extent that it is based on the claims set forth in Counts II, III, and IV. *See, e.g., Agoha v. Oddo, et. al.*, Civ. No. 25-00553, 2026 WL 1436554 (W.D. Pa. Mar. 25, 2026), report and recommendation adopted, 2026 WL 1045411 (W.D. Pa. Apr. 17, 2026) (Haines, J.) (denying petition based on premature *Zadvydas* claim where petitioner was detained for two months); *Phan v. Oddo, et. al.*, Civ. No. 25-00348, 2026 WL 60337, (W.D. Pa. January 8, 2026) (Pesto, M.J.) (denying petition based on premature *Zadvydas* claim where petitioner was detained for four months). Said denial, however, is without prejudice to Petitioner to file a

new habeas petition should his post-final order of detention extend beyond the 6-month presumptively reasonable period recognized in *Zadvydas*.

**B. Count I of Petitioner's Habeas Petition**

Petitioner asserts in Count I that the means by which Respondents detained Petitioner on May 27, 2026, violated both the governing regulations, 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13(i)(3) (an *Accardi* doctrine violation), and Petitioner's procedural due process rights. (Doc. 1 at 8-10).

Petitioner's habeas petition must be denied with prejudice to the extent it is premised on these claims because, based on 8 U.S.C. §§ 1252(b)(9) and (g) ("Section 1252(b)(9)" and "Section 1252(g)"),[2] this Court does not have subject matter jurisdiction to adjudicate these claims which challenge the means by which Respondents detained Petitioner on May 27, 2026 in order to effectuate his removal from the U.S. pursuant to  final order of removal.[3]

---

[2] 8 U.S.C. § 1252 is titled "Judicial review of orders of removal." Section 1252(b)(9) is titled "Consolidation of questions for judicial review," and provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(g) is titled "Exclusive jurisdiction" and provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

[3] While Respondents did not raise lack of jurisdiction as a basis for this Court to deny this claim, it is well established that this Court may *sua sponte* consider whether it has subject matter jurisdiction to address claims brought before it. *See Obado v. Super. Ct. of New Jersey Middlesex Cnty*., No. CV 21-10420 (FLW), 2022 WL 283133, at *3 (D.N.J. Jan. 31, 2022) (determining: "[T]he Court lacks jurisdiction over several of Petitioner's claims for relief and may *sua sponte* consider whether it has subject matter jurisdiction. *See Liberty Mut. Ins. Co. v. Ward*

As explained by the Court of Appeals for the Third Circuit in *Tazu v. Attorney General of the United States*, 975 F.3d 292 (3d Cir 2020):

> **III. THE DISTRICT COURT ALSO LACKED JURISDICTION TO REVIEW TAZU'S DETENTION CLAIM**
>
> Tazu also challenges the Government's re-detaining him for prompt removal. The Government, he notes, ended his supervision period without first giving him notice and a revocation interview. By doing so, he argues, it violated the agency's rules and thus due process. *See* 8 C.F.R. § 241.4(l)(1). While this claim does not challenge the Attorney General's decision to execute his removal order, it does attack the action taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it.
>
> **A. Section 1252(g) strips us of jurisdiction over the act of executing a removal order; that act includes Tazu's short re-detention**
>
> The text of § 1252(g) resolves this claim. It strips us of jurisdiction to review the Attorney General's "decision or action . . . to . . . execute [a] removal order[ ] " (emphasis added). Tazu's challenge to his short re-detention for removal attacks a key part of executing his removal order. The verb "execute" means "[t]o perform or complete." Execute, Black's Law Dictionary (11th ed. 2019). And to perform or complete a removal, the Attorney General must exercise his discretionary power to detain an alien for a few days. That detention does not fall within some other "part of the deportation process." *Am.-Arab*, 525 U.S. at 482, 119 S.Ct. 936. We thus hold that a brief door-to-plane detention is integral to the act of "execut[ing] [a] removal order[ ]."
>
> The Government re-detained Tazu just three days after it got his new passport. If courts had not intervened, it would have removed him just three-and-a-half weeks after re-detaining him. Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal. So § 1252(g) funnels review away from the District Court and this Court.

---

*Trucking Corp*., 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject-matter jurisdiction and to decide the issue sua sponte . . . ."). *See also Agake v. Blanche*, Civ. No. 26-1030, 2026 WL 1431091, at *2 n. 5 (D. Nev. May 21, 2026) (explaining: "Although not argued by Respondents, . . . the Court *sua sponte* determines that it lacks jurisdiction to consider one of Plaintiff's requested forms of relief."); *Trabelsi, v. Crawford*, Civ. No. 24-1509, 2024 WL 5497113, at *5, 5 n.6. (E.D. Va. Dec. 2, 2024 (stating: "The Federal Respondents-Defendants raise the first two statutory bases for a lack of jurisdiction and, because this matter implicates this Court's subject-matter jurisdiction, the Court *sua sponte* also considers the application of Section 1252(g).") (citing *Brickwood Contractors, Inc. v. Datanet Eng'g Inc*., 369 F.3d 385, 390 (4th Cir. 2004).

> **B. Section 1252(b)(9) also eliminates the District Court's jurisdiction over Tazu's re-detention claim, as it "arises from" an action taken to execute his removal**
>
> Though § 1252(g) does independent work, it can overlap with § 1252(b)(9*). Am.-Arab*, 525 U.S. at 483–84, 119 S.Ct. 936. The latter provision states that if a claim "aris[es] from any action taken or proceeding brought to remove an alien," then review of that claim "shall be available only in judicial review of a final order." In other words, § 1252(b)(9) funnels that claim into a petition for review.
>
> To remove an alien means to send him back permanently to his home country. *E.O.H.C.,* 950 F.3d at 184. Tazu's claim arises out of the action to remove him. In *E.O.H.C.*, we held that sending Guatemalans to Mexico temporarily to await the outcome of their pending asylum application did not "arise from" an action to remove them because it was "not part of the process of remov[ing] [them] to Guatemala." *Id*. Here, by contrast, Tazu's brief re-detention was part of sending him back to Bangladesh. And the legal questions he raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus "aris[e] from") an "action taken" to remove him there. *See, e.g., Aguilar v. U.S. ICE*, 510 F.3d 1, 13–14 (1st Cir. 2007) (holding that § 1252(b)(9) funneled an ineffective-assistance challenge into a petition for review because the challenge was "inextricably intertwined with" the alien's "removal proceeding").
>
> Section 1252(b)(9) does not foreclose all claims by an immigration detainee. If Tazu had challenged the length of his confinement, for instance, he could have pursued that challenge outside a petition for review. *See E.O.H.C.*, 950 F.3d at 186. That is because prolonged detention suggests that removal is not reasonably foreseeable. *See Demore v. Kim*, 538 U.S. 510, 527, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (distinguishing detention once removal is "no longer practically attainable" from detention when removal is imminent) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)). Challenges to the length or conditions of an alien's confinement are not directly about removal. "For these claims, review is now or never." *E.O.H.C.*, 950 F.3d at 180. So the Act does not funnel them into a petition for review.
>
> Here, by contrast, Tazu's re-detention challenge is directly about removal. So whether we analyze it under § 1252(g) or § 1252(b)(9), the outcome is the same: the District Court lacked jurisdiction to hear it.

*Tazu*, 975 F.3d at 298–99. *See also Molina Chacon v. Venturella*, Civ. No. 26-6512, 2026 WL 2287933, at *2 (D.N.J. Aug. 10, 2026) (concluding as to "Petitioner's Fifth Amendment and Administrative Procedure Act claims [that] allege that ICE used his fingerprint appointment as a

pretext to apprehend him:" "Even accepting that allegation as true, those claims challenge the Government's initial decision to detain Petitioner and its execution of the final removal order, rather than the length or conditions of his confinement. 8 U.S.C. § 1252(b)(9) channels claims challenging the basis for removal and the Government's initial decision to detain a noncitizen into the petition-for-review process. *Khalil v. President of the United States*, 164 F.4th 259, 275-81 (3d Cir. 2026). Section 1252(g) separately deprives district courts of jurisdiction over claims arising from the decision or action to execute a removal order, including constitutional and statutory challenges to whether and when the order may be executed. *Tazu v. Att'y Gen.*, 975 F.3d 292, 296–300 (3d Cir. 2020). Petitioner may not avoid those jurisdictional limitations by characterizing his challenges to detention and execution of the removal order as due-process or APA claims. *See id.* at 299-300. Therefore, the Court will deny the Petition without prejudice to Petitioner filing a new habeas petition if his detention becomes unreasonably prolonged."); *Pokhrel v. Oddo* et al., Civ. No. 3:26-1052, 2026 WL 1758206 (W.D. Pa. Jun. 15, 2026) (Schwab, J.) (finding as to petitioner's claim that the respondents "violated his procedural due process rights under the Fifth Amendment when, after detaining and releasing Petitioner subject to an Order of Supervision ('OSUP') in January 2026, DHS re-detained Petitioner in May 2026 without providing him adequate notice and opportunity to be heard prior to, or after, re-detaining him:" "as explained in *Roe*, which interpreted *Tazu*," under Section 1252(b)(9) and Section 1252(g), "this Court does not have subject matter jurisdiction to hear this claim") (quoting *Roe v. Oddo*, Civ. No. 3:25-128, 2025 WL 3030692, at *13-14 (W.D. Pa. Oct. 30, 2025)); *Van Phan v. Oddo*, Civ. No. 25-348, 2026 WL 60337, at *1-2 (W.D. Pa. Jan. 8, 2026) (Pesto, M.J.) (concluding as to petitioner's claim "that when ICE revoked the OSUP and arrested him in September 2025 without notice and an opportunity to be heard, it violated the Immigration and

Nationality Act and ICE's regulations at 8 C.F.R.§ 241.13(i)(2) implementing the Act, the Administrative Procedure Act, and the Fifth Amendment's guarantee of due process:" that the court lacked jurisdiction to consider the claim and in so holding, cited to the following statement by the *Tazu* court as governing petitioner's claim: "'Tazu also challenges the Government's re-detaining him for prompt removal. The Government, he notes, ended his supervision period without first giving him notice and a revocation interview. By doing so, he argues, it violated the agency's rules and thus due process. *See* 8 C.F.R. § 241.4(l)(1). While **this claim** does not challenge the Attorney General's *decision* to execute his removal order, it **does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it**'.") (emphasis in original); *Roe v. Oddo*, Civ. No. 3:25-128, 2025 WL 3030692 (W.D. Pa. Oct. 30, 2025) (Haines, J.) (determining, *sua sponte*, where the petitioner claimed that ICE's revocation of an order of supervision (OSUP) as part of the process of executing a final order of removal "violate[d:] the Immigration and Nationality Act and its attendant regulations, the Administrative Procedure Act, and the Fifth Amendment of the U.S. Constitution" "because ICE failed to follow its own procedures" in that the petitioner allegedly "had 'not received written explanation or even notice of [ICE's] decision to rescind his OSUP and [re-]detain him[,]'" that the court lacked jurisdiction to adjudicate the claim because Section 1252(b)(9) and Section 1252(g) precluded the court's review of the claim) (citing *Tazu*, 975 F.3d at 294-296, 298-299; *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020)).

**C. Petitioner is Not Entitled to Costs or Attorney Fees Pursuant to the EAJA**

Finally, for all of the reasons set forth above, the Court finds that Respondents' position was substantially justified in this case, and thus, no costs or attorney fees shall be awarded pursuant to the EAJA.

## III. CONCLUSION

For all of the above-stated reasons, Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) IS DENIED WITHOUT PREJUDICE to Petitioner to file a new habeas petition should his post-final order of detention extend beyond the 6-month presumptively reasonable period recognized in *Zadvydas* and otherwise is DENIED WITH PREJUDICE.

SO ORDERED this 26th day of October, 2026,

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel of Record